is 22-3025125 Savage v. LeBlanc. Ms. Glazer? Thank you, Chief Judge Richman. Good morning. My name is Phyllis Glazer, Assistant Attorney General, on behalf of the eight defendants appellants in this suit. James LeBlanc, Daryl Vannoy, Joseph Lamartiniere, Tim Delaney, Shirley Cootie, Sondra Rosso, Heather Hood, and Lucius Morris. All eight of these individuals were denied qualified immunity from the suit that was initially filed pro se by a prisoner currently housed at the Louisiana State Penitentiary in Angola, Louisiana. Mr. Savage alleges that, I'm sorry, Mr. Savage alleges that his proceeds from the sale of his rodeo was taken in violation of his 14th Amendment procedural due process rights. The claim as he wrote it was not the same claim that the magistrate judge and district judge identified or the claim that it was discussed in briefing, but the general idea is the same. Mr. Savage claims that there has been a practice in Angola for at least 25 years that he's been selling hobby craft at Angola, and that practice has the individual prison officials, not individual prison officials, but the prison take money out of their the inmates accounts after it's been deposited, after he makes a sale, which is then used to pay sales taxes, commissions fees, credit card fees, things like that. He, although, Mr. Savage doesn't actually claim in his complaint that he didn't know about it, the policy, so the lack of notice is not pleaded, and there are conclusory allegations that are not cited to the pleadings in Mr. Savage's briefing, but he knew about it. The policy has been going on for decades, or the practice, as he describes it, has been going on for decades, and he claims that he wasn't given a hearing, and that really is the focus of where we are right now, the hearing. He doesn't say or cite any law in his briefs, and neither did the district court, as to what hearing the due process cases out there say the type of hearing that's appropriate is going to depend on the nature of the right at issue, so a taking of property without due process doesn't require the same kind of hearing in every single circumstance, and including the timing of it relative to the deprivation and all of those things, and so Mr. Savage on appeal, it's still pending, and that is a case in which he could recover the money from the entity, I believe so, if he prevails, I believe so, because these people did not take the money, they just are alleged to have conspired in assisting in that, but they aren't the ones who have the money in their pocket, the money is in the pocket of the state defendant, the state, yes, well, I think, isn't it the Department of Public Safety that's been sued? No, no, the department isn't a party, the suit was filed in federal court, this one wasn't. No, no, I'm talking about the state case. Yes, I'm sorry, yes, correct, yes, sorry, on the state case, yes, it is, yes, the department is the defendant, and is the only property. Who has the money in their pocket, if it was improperly taken, that's who can give it back? Some of it, yes, some of it was sales taxes that went to the parishes. They're the ones who took it and paid the sales tax, what I'm saying is they're the ones that had the money, the allegation against your clients is they were conspiring to assist in the Department of Public Safety getting money it shouldn't get, is that right? Yes, to an extent, that's part of it. Sondra Rosso, who works in inmate banking, is really the only one who's accused of actually doing that. Most of the defendants are accused of conspiring or being involved in his, right, the conspiracy after, the conspiracy to deny his ARP grievance and the conspiracy to interfere with the state court proceedings, not the actual taking of the money at the for that, which is part of what's gotten a little confusing, because the deprivation You're all in a conspiracy for all of that, no? I don't think so, and I couldn't point to That's where the person by person should have been done. Yeah, it certainly would help in this, to answer that question, but from what I can, there are statements in the briefing that suggest that it's, what do they call it, a defendant vandal, he was the retired warden, that it was an illegal scheme of his, I mean, there's that, and then there's Sondra Rosso, who is sued, she worked in inmate banking, but again, it's not, he's not suing about the actual taking of the money, from what I can tell, he's suing about what happened afterwards, and the involvement of all of these defendants in a conspiracy with regards to his ARP grievance, his administrative remedy procedure, we call it the ARP in Louisiana, and then the hearing. These individuals, though, didn't violate his constitutional rights, and their conduct was not objectively unreasonable in light of clearly established law. There's a line of cases from this court, including the Geiger case, which say that a prisoner does not have a due process interest in having his ARP or his grievance handled in a particular way, to get a particular relief from it, that there are no due process rights inherent in the ARP process. So with that case out there, and its progeny, it is not clearly established that the allegations against all these people alleged to have, under the guise of a conspiracy, denied his ARP grievance, violated clearly established law, or the law didn't put them on notice that writing their name on the denial of an ARP, it was going to subject them to personal liability under 1983. And that is, in fact, what the claim is against several of the defendants. But, I mean, in their brief, they do say that Vannoy, for example, confiscated, unlawfully confiscated funds, that Rosso illegally seized the funds, and some of these other people knew or should have known that there was this illegal conduct, and they were participating in it. So, I mean, it's not totally irrelevant about the funds. Right. It's not irrelevant, but I don't think that that's the, that wasn't the focus of the conspiracy, and I don't think it's the focus of his claims. I mean, the, he is not in practice, I should say, because it's, he's not, it's, there isn't a Monell-type claim or whatever we're calling it these days, a supervisory liability type implementing a, an illegal policy claim. That's not there. It's not there. In the, it's not in the pleadings, it's not in the briefing, it's not there. And so, to the extent that that's what they're they, on page six of their brief, when they bullet point the summary of the claims against each defendant, they said the, the warden, Warden Vannoy, received and denied his first-step grievance despite knowing that it was meritorious. Well, that's not an action that can subject him to liability, per this court's precedent. He admitted to his lawyer, Defendant Hood, that he had unlawfully confiscated funds. Okay. I'm not sure what, like, and then he agreed with Hood to resolve the first-step grievance by labeling the confiscation a practice and denying him a hearing on that basis. That doesn't, I mean, that's a conclusory statement that doesn't make any sense. They resolved the grievance. They did it timely and in accordance with the, you know, with the regulation. But, I'm not sure what hearing they're talking about. Louisiana's art process doesn't call for any type of hearing, nor do they point to one. They use this word throughout the briefing, hearing, without identifying what type of hearing the law says they were entitled to. Another example of that is the issue with the state court proceedings. In the state court proceedings, Mr. Savage claims he was denied a hearing when the judge converted his mandamus into a petition for judicial review and canceled oral argument. Well, what the order actually says is that the hearing on the briefs is sufficient. She didn't need to have oral argument. That's not the denial of a hearing. It's a denial of oral argument. Is there any law that says that the commissioner was required to have oral argument, that that was a due process requirement? No. And so that's . . . But why is the hearing up to them? Up to whom? Your defendant, your clients. That's a very good question. The plaintiff is . . . well, anybody who's got property is entitled to a hearing from whom, like, provided by, in accordance with the practice or policy that authorizes the taking of the funds. And so that's the big distinction between per at, the random and unauthorized taking of property, and one that is done per policy or statute or an established practice. The established practice should come with notice and an opportunity to be heard. We're not sure what type of hearing he wants, but that's what . . . and then, so in theory, it should be the state . . . Who is the one who decides whether to give a hearing? Who of your clients decides that? In this case? Yes. We don't know what kind of hearing we're talking about, I mean, or who he's going to be heard by and for what. And so I really, I can't . . . Are any of them the ones who determine that? Are any of the ones who decide that? No. I mean, for example, if your opponents did ask for oral argument here, but if they didn't, they said, we really don't want oral argument, you couldn't sue them for that, because guess who decides whether you have oral argument? Us. So that's why I'm asking. Yes. No, you are entirely correct. I was going to use that oral argument example myself. Yes, that's what I'm trying to understand. How are your clients the ones who determine that? They're not. In certain circumstances, they do provide hearings, restitution hearings. For example, when a prisoner is convicted in a disciplinary setting of destroying property or stealing someone else's property, then the department, through its prison officials, can, you know, they impose restitution, and then there's a restitution hearing to determine a mountain, where it comes from, and things like that. That's not . . . and that's statutory. All eight of these people aren't able to give even that hearing, right? Correct. Who is it that would decide that? It would be the . . . I think it's part of the disciplinary process. It's per the statute, the restitution statute, which we talk about in our brief. The restitution hearing statute, I should say, to be clear, that was the hearing that Mr. Savage originally asked for, which is clearly not entitled to, because that's not to get funds from the department. It's for the department to get funds from prisoners. But it is Louisiana Revised Statute 15.875 that provides the process for the restitution hearing. And I can't remember if it identifies a specific person, such as the secretary or the warden, to make sure that the hearing is conducted. But generally speaking, it's something like that would go through the prison administration and then up through an appeals process to the secretary and then to the 19th JDC and up from there, which he's more than welcome to do. The other thing I should mention really quickly before my time expires is the ongoing nature of those state district court proceedings makes it really difficult to conclude that there has been a due process violation that is compensable. You can't get money for something that hasn't happened yet, and these individuals are being sued for money, but they can't be sued for money for a violation that hasn't yet occurred. And the ongoing nature of those state court proceedings, including available appeals and things like that, preclude any due process violation in connection with that, with those proceedings. Are you saying that's a ripeness or a standing issue or what? No, I think it's a no cause of action, because this is a claim for money damages. I mean, I guess technically speaking, it would be a ripeness. It would be a dismissal, not a judgment with preclusive effect. I would be okay with that, yes, Your Honor. Good morning. May it please the Court. Stephanie Reeves on behalf of Appellee Gregory Savage. The district court correctly found that Mr. Savage stated a claim for a procedural due process violation, and the specific procedural due process violation is deprivation of his property without due process. The district court also found a related claim for conspiracy, and the district court was correct to deny . . . So it is the taking of the money? Yes, and I think that's one thing that . . . Why are you suing these eight people for the taking of the money? So I think there's a couple of things. Mr. Savage's underlying claim, and it's clear at various points in the record, but I want to get to your direct question. The reason we're suing these individual people is because they are all part of the deprivation of due process. Mr. Savage alleges that on the front end, pre-deprivation, there is no statute regulation, any other sort of authority for this practice that the prison has, and so I don't think the appellants are even arguing that there's any sort of pre-deprivation process that's happened here. And on the back end, his complaint, and he's actually very clear pro se in his opposition to their motion to dismiss, that his complaint isn't about any individual portion of the process. He acknowledges he doesn't have a right to an administrative grievance to be resolved in his favor. He doesn't have a right to the specific hearing. His claim is that as a whole, the interference of these individual defendants at various stages means that there was no pre-deprivation process and there's also no meaningful post-deprivation process. And so he is alleging that they are part of this conspiracy, but the underlying constitutional violation is the deprivation of his property without process. What's left to be decided in the state court? So in state court, still pending is the underlying, the appeal of his initial grievance that they're taking his property. And if he wins that, what does that do to this suit? So I think that if he wins that eventually, that could impact this case on remand. But I think I'm sorry, how could it impact this case? I think it would impact this case at the next stage, but not at this stage of the proceeding. Because at this stage of the proceeding, Mr. Savage is alleging that their interference has essentially made this into a meaningless sham proceeding, both at the administrative process and in the court hearing. Well, if that hadn't occurred, if he's getting, can he get relief, can he possibly get state court relief in what's pending? Not given the actions of the defendants here. And so Mr. Savage is Why can't he be fully vindicated in the state court? The allegation is that he won't be fully vindicated because of a couple of things. First, we have the conversation that Defendant Hood had with Commissioner Robinson, who's no longer part of this case because of a separate dismissal. But the allegation is that they agreed that we are not going to allow you a hearing. We think that you're a troublemaker. We don't want to deal with you, essentially. Another part of it is that the Mr. Savage alleges that Defendant Hood and Defendant Morris have inserted an affidavit into a related proceeding that essentially is going to prejudice the case against Mr. Savage so that whenever the court gets to hearing his case, he's going to lose it because the government has, after the fact, manufactured support. Can that other forum decide whether the affidavit is going to affect it or not? I mean, can't that be resolved in that other proceeding? That's certainly possible, and I think that's part of the problem. Why isn't this all speculative, what you're asking right now? I don't think it's speculative because Mr. Savage is, I think, sufficiently pled that what has happened so far is interference. That means he hasn't gotten a meaningful process. And I think we're at a stage where he has specific factual allegations. I'm struggling a little bit because, I mean, I was a state court judge. There were a lot of times that the parties were fighting with each other over this and that. You're delaying things. You're causing problems. You're not giving me your discovery, whatever. They didn't sue those people because you didn't give me enough discovery. They argued it to me, and I had to address it. I mean, that is kind of what a state court proceeding deals with. It deals with your opponent is being difficult and causing problems and not doing what's right. But that's not a separate lawsuit. Otherwise, every lawsuit I had would have become ten lawsuits, probably. I understand. I had enough. I think that Mr. Savage's allegation is different. He's not alleging that just, oh, judge, you need to get this discovery. He's saying that I have done all of the steps that I'm supposed to do, and they're tainting the process along the way so that when it gets to— Well, why can't the state court decide if the process is tainted in the first instance? What if they say, we're going to disregard this affidavit. We're going to do this, that, and the other, and you win. You get your money. So I don't— So what claim do you have left against defendants in this case? Yes. I don't think Mr. Savage has had an opportunity to present that because right now he has been pending since 2019. He submitted his briefs. He learned about the conspiracy of the conversation with the defendanthood after the fact, and nothing has happened in his case. So part of his allegation is that the process is meaningless because nothing has happened. Part of his allegation is that by the time the court reviews it, he's not going to have another opportunity. How long do cases usually take in that court? So that is not something that's in the record, and I think that there isn't—I don't think it would make sense for this court to determine there's a particular length of time. But what I'm saying is, I mean, I can certainly remember as a lawyer having cases that would sit around for years. When I started on the state trial court, we had physical files of every case, and there were some really old ones sitting there that had just been simply sitting there. I picked them up and set them for trial. But, you know, so the notion that something has sat in state trial court for a while does not, to me by itself, mean anything improper by the parties. We agree. And so why—I guess Chief Judge Richmond's questions are kind of like, why wouldn't we wait to see what happens in the state court before determining if there's some federal violation? Because either he could prevail, get his money, or there could be some determination under state law where he wasn't entitled to the money, and so then that maybe would be fair under state law. So then I'm just trying to understand that. So I think the issue is that at this point, Mr. Savage has alleged enough to say that the process is meaningless, and I think that there is at some point a line that has to be drawn to say why is nothing moving forward. So are we saying state court in Louisiana is meritless, improper, unhelpful? I mean that seems a bit much for us to be deciding that. No, and we're not asking for the court to say that. Mr. Savage's underlying allegation is that the general process does provide the adequate due process it's supposed to be. His allegation is about the interference, the way he's laid out about these individual actors that have— We don't have authority over state courts. I mean we can decide a habeas here and there, and there are certain things that we can decide, but we, for the most part, don't have authority over state courts. Yes, and the request is not for this court to say that the state court has to or can't do this or that. The request, Mr. Savage's request for relief, is to make these officials stop interfering with that process so that process could go forward. Are you seeking an injunction or damages? Mr. Savage is seeking declaratory relief, an injunction, and damages, all three. And so I think a side issue is that the qualified immunity only applies to the— Right, to damages. Yes. You were going to say a while ago, by the time the state court reviews and then you didn't get to finish your answer, what were you going to say? Sure. I think I got lost a little bit in my train of thought, but I think that the reason why the violation is already established at this point in time is because, first, of the lack of pre-deparation process, and second, because of all of the actions that these individuals have allegedly taken to make this process meaningless. And so I think that there's a—I think Mr. Savage has sufficiently alleged this is essentially a sham proceeding because of the interference, and I think it's a question on remand about whether or not—and then questions regarding, for example, what's the reason for why the case has taken this long, or what did the officials actually know? What communications do they actually have or not have with the court? Those are factual issues that maybe Mr. Savage doesn't get past the pleading stage, but his allegation that he is pled with factual support is that the interference means he's no longer receiving meaningful review. Can you cite me to where he alleged pre-deprivation issues in the trial? Yes. So in his complaint—court's indulgence—the complaint and the introduction of the complaint is talking about deprivation. For example, on page 3 of the complaint— Page 3 of the complaint. Page 3 of the complaint, he says, the prison officials have conspired to deprive plaintiff of his property without due process in violation of the law. And I think that a lot of the more fulsome explanation is in the motion to dismiss opposition, which since he's pro se, we consider those as amendments. And in the motion to dismiss, it's record starting at 188, he specifically talks about how they're depriving him his property without due process, that they're depriving him— So I don't think that Mr. Savage, and again proceeding per se, in his complaints themselves, is talking about pre- versus post-deprivation in that language, but he does say very clearly that there is no authorization for the policy or the practice of taking the money. And I think part of what adds factual support to that is there's Louisiana case law actually asking the department to provide what regulation, statute, policy, authority for it, and there apparently is none. But so I think his allegation that all of them know that there is no authority for it is essentially his pre-deprivation claim. And then, yes, in the complaint, most of the individual actions he describes are talking about that post-deprivation part of it. We also focused on pre-deprivation because I think that's what the district court and the magistrate court found. They specifically found the Perot-Hudson doctrine doesn't apply because the underlying constitutional violation already occurred when his property was taken without due process. But I think the broader point is that neither before nor after the taking of his property is Mr. Savage receiving any sort of meaningful review. We're looking at qualified amenities, so clearly established law. Yes. What is the clearly established law that puts defendants in these cases on notice that they can't take some percentage of the sales that he made for fees, et cetera? Yes. So I think it starts with the clearly established law surrounding the property interests that people have in money in general and that specifically that inmates have in money. And I think the Morris case, it's a 2014 case, but it cites a number of other cases, both in this circuit and in other circuits that show that it's kind of a given, accepted, that, yes, inmates have a protected property interest in the funds in their accounts. That shouldn't be controversial. And if it's a protected property interest, then Logan v. Zimmerman, which is what the Zimmerman Brush Company is, what the district court and magistrate court— This isn't funds in an account. Yes. He's selling belts. He's transported to the Engel Rodeo. I guess he has a booth there. Where's the clearly established law that if you charge him taxes or whatever, deduct taxes, deduct fees for the booth, whatever, that that's a taking or a violation of a property interest? So I think it's two parts. It's, one, what I mentioned about he has a right to the money in his account, and the allegation is that they're taking it from his accounts after he has earned this money. And I think there's also Louisiana case law, the Fulford case, that says that the profits that inmates earn at the rodeo belongs to the inmates. That was a case where a different inmate who didn't participate in the rodeo was saying, hey, that money that they're making should actually go to the welfare fund that benefits the entire prison. And this is a 1985 Louisiana case that says, no, the profits that inmates are making when they sell things at the rodeo are. Again, that's profits. They didn't take everything. They didn't take half. They took a certain percentage. What they say were fees, charges. Where's the case law that says that's, you cannot do that? So I submit that the case law talking about property interest or interest in money in slightly more generally also covers that situation. I don't think that qualified immunity requires us to distinguish between. Well, the defendants have to be on notice that what they did is that every official would know that taking, deducting fees, deducting taxes would violate the Constitution or some federal law. Yes. So where are they put on notice that if they deduct taxes and fees that they violated federal law? So I think the reason why I'm citing slightly more general cases is because Mr. Savage's allegation isn't that they're even actually taking it for taxes and fees. His allegation is that they're taking it under the guise of taxes and fees, and it's a question in the record to be decided at a later point of whether or not that's actually happening to it. So I think it's the principle that if this is money that he earned, he has an interest in that money. So again, they have to be on notice that they can't take taxes and fees, don't they? I think they are on notice that they can't take them. Tell me where that law is. I don't think that there's a specific law saying that they can't take taxes and fees, but I don't think that that's the correct level of generality. Why? Because it's not clear that that's what they're actually doing. His complaint is that they're taking the money and calling it taxes, fees, and commissions, but we don't know what they're actually doing with the money. There's nothing in the record saying that that's actually what happened to the money. But there's no indication the individuals put it in their pocket, is there? The eight that are being represented over here by. The way that Mr. Savage describes his allegations is he calls it a lucrative prison scam, and we have no record of where the money went or whether or not it actually went to taxes. And the related Anderson case that we cited, part of the issue is that in that related case, the department also hasn't presented any evidence that it's actually going to taxes, fees, and commissions. And so I don't think we can— That should be sorted out in a trial, it seems to me. I mean, I just—if the prison officials say, you know, it's costing us—this is a sale, and we think it should be treated like a tax, and also it's costing us the transport set up, we should get some reasonable amount for that. Where's the law that says that is not allowed? So I think where I'm not being clear enough is that Mr. Savage's allegation is that they know that there isn't any authority because there's no statute of regulation, and so they've just decided to do this without any authority, and they've decided they're going to take the money without any authority. If you wanted to go to Walmart and sell some things you made personally, don't you think you'd have to pay them to use the room? So I think—I don't disagree with that, but I think— The notion that the party that is overseeing the event gets some share of that is not unheard of. That's different from if Mr. Savage was my brother and I sent him $100 and they took $10 out of it. That's really different from he's doing a sale as part of his being a prisoner within them, and they're putting it together. Right, and we don't disagree that it hypothetically is possible and reasonable for them to do that. The problem is that there actually is no statute of regulation or policy that authorizes them to do that. What about the fact that he's in prison under the hard labor of Louisiana? Does that not make any difference to whether he can benefit from his hard labor? No, because, again, there's case law saying that the rodeo allows individuals to use their own money to make things, and Mr. Savage makes leather craft and to sell it, and they receive the proceeds from it. The prison certainly doesn't have to allow him to participate in the rodeo, but once he participates it and generates income, essentially, from it, there's nothing saying that the prison can just take whatever pot that they want. Can you tell me the slide for that case again? Sure. It's the Fulford v. Green case. It's Louisiana, for indulgence. 747, Southern, 2nd, 972, and then Anderson v. Louisiana Department of Public Safety, which is 242, Southern, 3D, 614. And those are the cases that Mr. Savage, even pro se, gets his underlying argument that these officials are knowingly taking the money without any authority, not that they are making a reasonable mistake. And I think that's what qualified immunity looks like, is whether they're making reasonably misapprehending the law. That's just a bare allegation. They are knowingly taking this without authority. What are the facts to back that up? So I think the factual support are things like the conversation that Mr. Savage alleges, and also, I think this case law provides support for that, that there actually isn't any authority for them to take it in the first place. And so when they go through these actions to prevent him from getting any review on the back end, I think that's a continuation of the conspiracy theory. In the state court, it's determined that they do have authority, and it goes all the way up to the Louisiana Supreme Court. The Louisiana Supreme Court says, yeah, they do. So then where does that leave this case? Do you get damages anyway? Does your client get damages anyway? I think that we're obviously not even in the stage of whether or not there are damages. And I think it would depend on whether or not the Supreme Court says, even though there wasn't authority, we're providing you authority now. I think that the allegations that we have here is that there is no statute or regulation or even written policy that the appellates can point to that authorizes it. And Mr. Savage's claim at the pleading stage, I think, is sufficient to show that he believes he's not getting actual process here. And I think the emphasis here is that we're at the pleading stage. I think there's a lot of things that could play out with a little bit of factual development, but he sufficiently pled that allegation that he is not getting due process. And I see my time is about to expire. I don't know if the Court has any additional questions. Thank you. So we would ask that you affirm the district court's opinion, the district court's ruling, and remand for the proceedings. Our burden as the defendants raising qualified immunity is to point to the absence of law that says that what these officials are accused of doing was illegal or unconstitutional or even that it was clearly illegal or unconstitutional, which is what the standard is. They're saying there's no authority at all under state law to deduct anything from his profits. And what do we do with the case law on the federal side? It says you don't have to wait in the 1983 suit for a state proceeding. There's no requirement of exhaustion. And so they come and ask the federal courts to say there's no authority, and so they violate the law by taking the money without authority. Why doesn't that state a claim? Well, those cases don't say that. In fact, the Anderson case, and I don't have the exact pin site in front of me, but the court in Anderson said we're pretty sure that there is authority. They just haven't given it to us in this case, and so they remanded it. It was the Louisiana Court of Appeals, so while it's very important to us, it's not binding on us. That is correct. That is what was relied on, though, as the basis for saying there's no authority for them to do what they did. It's the Fulford, isn't it? That was 2018, so kind of late in the game. Yeah, he filed his grievance after that decision came. I understand that, but, I mean, the conduct of them originally of taking his money has been going on for 20 years. Since the 90s, yeah, or the mid-90s, since he started selling Hobbycraft. Right. So, no, it has been going on for a long time, and, again, these people aren't the ones who did it. I mean, some of them, you know, Warden Bannow has been there for a long time, but he hasn't been there that long, and certainly not as a warden, and so these, you know, we are here in this court today talking about money damages because that's what you all have jurisdiction to hear, and now it's pretty clear that he hasn't sustained them yet in connection with the processes that are ongoing that he's . . . There is no requirement of exhaustion of state remedies to bring in Section 1983C. So, what do we do with that? Well, there . . . I mean, he's a prisoner, so there is the PLRA that does require exhaustion, but I think the question here is he's claiming he's being denied the very process that's ongoing. I don't think it's an exhaustion. I think that it's an essential element of the claim. How can he raise a claim that he's been denied something that he literally has not been denied and is still ongoing? He has appeal rights. There's no reason he can't file a motion to hurry up or something in the state court. He's not suing the public . . . In this . . . he is in . . . In state court. Correct. The department . . . I think the point is the idea that we don't need exhaustion of that for us to proceed is the claim against the Department of Public Safety, but the problem is with these individuals, it's just not really . . . I'm just struggling with what did they do wrong if he's in the middle of his claim in state court, proceeding to determine, you know, does he get any money, and then if he does, what's on them? Right. I completely agree. The process is ongoing. They haven't done anything to deny him a hearing. He got his art process, even though he wasn't satisfied with the results. I hear them saying two different things. They've got a process claim, but they've also got a taking claim for money damages. That they took his property without any authority, and he wants the money, and he doesn't have to go to state court first to get the money. He can sue directly in federal court for a taking. But he has to sue the right party. He has to sue the . . . under 1983, he has to sue the person who took the money. And not . . . I mean, that's not these people. Okay. And, you know, it's a department practice. That's what they keep saying. It's a department practice. And to challenge a department practice, you go through this process that he's going through. I'm going to also note, in one second, Lucius Morris does not work for the Department of Public Safety and Corrections. He is an attorney with the Department of Revenue who allegedly submitted an affidavit in the Anderson matter, not in Mr. Savage's matter, had nothing to do with Savage at all, and has not been filed in Savage's case. He shouldn't be in the suit. If you're going to dismiss anybody, dismiss him with prejudice. But we would ask that all of it be dismissed. Thank you all for hearing this case. Thank you. That will conclude the arguments for today. The court will be in recess until 9 o'clock in the morning. Thank you.